CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL 13 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| Marianne R., O/B/O Kent R. | ) | |
|     Plaintiff, | ) | Civil Action No. 4:22-cv-00024 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| COMMISSIONER OF | ) | By:  Joel C. Hoppe |
| SOCIAL SECURITY, | ) |        United States Magistrate Judge |
|     Defendant. | ) | |

Plaintiff Marianne R. asks this Court to review the Acting Commissioner of Social Security's ("Commissioner") final decision denying her deceased husband's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, ECF No. 11-1, the parties' filings, and the applicable law, I find that the Commissioner's final decision is supported by substantial evidence and should be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th

Cir. 2017); 20 C.F.R. § 404.1520(a)(4).[1] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Background

This is Kent's second DIB application. *See* Administrative Record ("R.") 100. Kent previously filed in June 2012, alleging that he could not work because "constant pain in his neck and back" impaired his abilities to lift, stand, and walk. *See* R. 76, 78–79. On June 25, 2014, ALJ Marc Mates issued a written decision finding that Kent's "severe" degenerative disc disease, left arm difficulty, hypertension, and diabetes, R. 76, were not disabling because Kent still could perform certain "sedentary"[2] jobs existing in the national economy, R. 77, 86–87. The Appeals Council declined Kent's request for review, making ALJ Mates's decision the "final decision of the Commissioner" that Kent was not disabled on or before June 25, 2014. *See* R. 92. This Court affirmed that decision in March 2017. R. 98.

\*

On January 30, 2019, Kent filed this DIB claim, R. 169–70, alleging that he was disabled by neck and back pain, diabetes, high blood pressure, cirrhosis of the liver, numbness in his arms and hands, hip weakness, continuous coughing, anemia, and vision issues, R. 194. Kent alleged

---

[1] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

[2] "Sedentary" work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools," 20 C.F.R. § 404.1567(a), plus sitting for about six hours and standing/walking for about two hours during an eight-hour workday, *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 768 (W.D. Va. 2002); SSR 96-9p, 1996 WL 374185, at \*3 (July 2, 1996). "Younger" claimants "who are limited to no more than sedentary work by their medical impairments have very serious functional limitations," but they typically are not presumed disabled. SSR 96-9p, 1996 WL 374185, at \*3. The "majority of individuals . . . aged 50 or older" will be presumed disabled if limited to sedentary work. *Id.*

disability beginning on June 26, 2014, one day after ALJ Mates issued his prior decision. *See* R. 100, 103. He was forty-eight years old, or a "younger person" under the regulations, in June 2014. R. 99; 20 C.F.R. § 404.1563(c). When Kent turned fifty on January 28, 2016, he moved into the "closely approaching advanced age" category under the regulations. *See id.*

Disability Determination Services ("DDS"), the state agency, denied Kent's claim initially in April 2019, R. 99–109, and upon reconsideration that July, R. 111–25. On initial review, DDS determined that Kent met the Act's insured-status requirements through December 31, 2016.[3] R. 99. Michael Koch, M.D., noted that the most recent pre-DLI medical evidence in Kent's file was from July 2014, and Kent had "no visits with any [medical] provider" for the rest of the relevant time. R. 104 (citing R. 260–65); *see also* R. 197–200 (Kent reporting medical treatment in 2011–2013 and 2018–2019); R. 378–98 (DDS log note requesting all medical records dated June 1, 2013, through December 31, 2016). In July 2019, Robert McGuffin, M.D., similarly noted that Kent's file contained "no detailed" physical examinations since 2014, roughly two years before his DLI. *See* R. 119. Both physicians opined that Kent had preexisting medically determinable impairments ("MDIs") during the relevant time, including obesity, a spine disorder, and "other and unspecified arthropathies." R. 105, 120; *see* R. 103–04, 118–19 (citing R. 243–51, 257–65, 371–72, 374).[4] Nevertheless, Kent did not produce evidence

---

[3] This date is called the date last insured, or "DLI." *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012). "To qualify for DIB," a claimant "must prove that [they] became disabled prior to the expiration of [their] insured status." *Johnson*, 434 F.3d at 655–56; *accord* R. 21, 108, 124.

[4] The physicians also summarized other treatment notes and diagnostic images dated between January 2012 and April 2014, *see id.*, but the records themselves are not exhibited in Kent's second DIB claim file. *See* Pl.'s Br. in Supp. 2 ("Because the administrative record does not contain medical records pertaining to [Kent's] prior claim, the summary of the evidence presented [in this brief] is derived mainly from what is reported in ALJ Mates's prior decision and this Court's evidence summary" in Kent's subsequent appeal (citing Case No. 4:15cv56, 2017 WL 818607, at *2–6 (W.D. Va. Feb. 6, 2017))). Kent's second DIB claim file also contains post-DLI medical records from 2018–2019. *See, e.g.*, R. 305, 316, 339, 357, 370. The DDS physicians did not mention those records.

"sufficient" to determine the extent, if any, to which those MDIs affected his functioning before December 31, 2016. *See* R. 104–08, 117–22, 124. Thus, Kent failed to show that he had a "severe" MDI during the period relevant to his second DIB claim. R. 108, 124. Kent's attorney requested an ALJ hearing in September 2019. R. 136–37, 144.

Kent died two months later. R. 162. His widow, Marianne, promptly notified the agency that she "wish[ed] to be made a substitute party and to proceed with" the ALJ hearing Kent had requested. R. 160. ALJ Suzette Knight set the hearing for March 9, 2020. R. 45. On March 6, Marianne notified ALJ Knight that she would not attend the hearing in person. R. 163. Instead, she wanted "a decision to be made at the hearing on March 9, 2020, without [her] attendance." *Id.* Marianne did not attend the March 9 hearing, but her attorney appeared on her behalf. R. 28. At the hearing, ALJ Knight substituted Marianne as a party to Kent's DIB claim. *See id.* She also noted "that there [was] not much medical" evidence in Kent's file dating from June 25, 2014, his alleged onset date ("AOD") to his DLI on December 31, 2016. R. 29. Counsel confirmed that Kent's record on this DIB claim was "complete" and there were no "outstanding medical records" from the relevant period that ALJ Knight "need[ed] to obtain" before issuing her written decision. R. 29; *see generally* R. 22–25 (List of Exhibits); R. 71–383 (Exhibits B1A to B8F).

He also moved to amend Kent's AOD to January 28, 2016, his fiftieth birthday.[5] ALJ Knight responded, "[i]f you amend the onset date to January of 2016, then I really don't have anything" to review, R. 30, because "I don't have medical records" from that period, R. 31. Counsel acknowledged the ALJ's point, but he did not "object[] to any of the exhibits correctly contained in the record" for this DIB claim. R. 31. Rather, he urged ALJ Knight to adopt ALJ

---

[5] After the hearing, Marianne filed a written motion to amend Kent's AOD from June 26, 2014, to January 28, 2016. R. 188. ALJ Knight granted that request. R. 189.

5

Mates's "sedentary" residual functional capacity ("RFC") determination and to find Kent disabled as of his fiftieth birthday. R. 31–33; *see* SSR 96-9p, 1996 WL 374185, at *3. A vocational expert also testified at the hearing. R. 34–40.

\*\*

ALJ Knight issued an unfavorable decision on April 8, 2020. R. 15–21. She first found that Kent did not work between January 28, 2016, and December 31, 2016, the relevant period for this DIB claim.[6] R. 18. As step two, she found that Kent had the following MDIs during that time: "spine disorder; other and unspecified arthropathies; obesity; hypertension; hyperlipidemia; other disorders of the gastrointestinal system; and diabetes mellitus."[7] *Id.* None of Kent's MDIs were "severe impairment[s]," however, because they had not "significantly limited [his] ability to perform basic work-related activities for 12 consecutive months," as the regulations require. R. 18–19; *see* 20 C.F.R. § 404.1522(a). "Basic work activities are the abilities and aptitudes necessary to do most jobs." R. 19; *see* 20 C.F.R. § 404.1522(b). The specific activities at issue in Kent's case include "physical functions" like standing, walking, lifting, and carrying, 20 C.F.R. § 404.1522(b)(1). *See* R. 18–20, 30–33, 76–77; Pl.'s Br. 2, 9–10, 12–13.

---

[6] In her brief, Marianne mistakenly defines the timeframe relevant to Kent's second DIB claim as running from June 26, 2014, the date Kent picked as his AOD when he filed this claim in January 2019, through November 19, 2019, the date he passed away. *See* Pl.'s Br. 1–2, 9, ECF No. 14. The Commissioner correctly notes that the relevant period here is actually "just shy of one year, from [Kent's] amended alleged onset date of January 28, 2016, through December 31, 2016, his date of last insured status." Def.'s Br. 6, ECF No. 19; *see Gray v. Berryhill*, No. 6:16cv9, 20017 WL 4296636, at *2 (W.D. Va. Aug. 8, 2017) (citing 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.101).

[7] Kent's DIB application also indicated "that he suffered from cirrhosis of the liver, continuous cough, anemia, and vision problems," *id.* (citing R. 194), but "the record contain[ed] no diagnoses or treatment related to [those] condition[s] before or during the relevant period," *id. See also* R. 112 (alleging "cataracts in both eyes" were a "new" physical problem that developed in April 2019); R. 305–07 (first cirrhosis diagnosis) (Jan. 2019). Thus, ALJ Knight found that those alleged impairments were "medically non-determinable" in January–December 2016. R. 18. Marianne does not challenge this finding on appeal. *See* Pl.'s Br. 2.

6

When Kent filed this DIB claim in January 2019, he "initially alleged that he was unable to work due to back pain, . . . neck pain, numbness in his arms and hands, [and] hip weakness[.]" R. 19 (citing R. 194). But, Kent's hearing-level record lacked any "medical evidence [or] . . . testimony," R. 20, showing that those symptoms significantly limited his physical functioning during the relevant time, *see id.* (citing DDS physicians' opinions that Kent's file contained "insufficient evidence to assess [his] physical functionality . . . prior to [his] date last insured," and concluding those opinions were "persuasive" and "supported by the lack of available records during the relevant period") (citing R. 104–05, 117–18). ALJ Knight found that Kent's MDIs "could reasonably have been expected to produce [his] alleged symptoms," but Kent's "statements concerning the intensity, persistence, and limiting effects of these symptoms"—namely that they prevented him from working—were "not entirely consistent with the medical evidence and other evidence in the record" before her, for three reasons. R. 20.

First, Kent did not produce any medical evidence "regarding [his] condition during the relevant period." *Id.* "Of note, the last [pre-DLI] medical record" in Kent's file was dated June 27, 2014, just days after ALJ Mates issued his prior decision and roughly eighteen months before Kent's amended AOD. R. 20 (citing R. 274–76). Kent's "physical examination was normal" that day. *Id.* (citing R. 275–76). Second, Kent did not produce any evidence that he sought or received medical treatment for his spine disorder or "other and unspecified arthropathies" before his insured status expired on December 31, 2016. *See* R. 19. To ALJ Knight, "the lack of treatment records during the relevant period" suggested that Kent's preexisting MDIs "at least did not worsen" after June 2014 and were "manageable without ongoing treatment" in January–December 2016. R. 20. Finally, the record available to ALJ Knight contained no testimony describing how Kent's MDIs affected his functioning during the relevant time, *see id.*, because

7

Marianne "waived her right to appear" at the hearing in March 2020, and asked ALJ Knight to decide Kent's claim "in her absence," R. 15 (citing R. 163). "Due to the lack of medical evidence of record and the lack of testimony," ALJ Knight concluded that Kent did "not have a severe impairment during the relevant period." R. 20.

      ALJ Knight also considered ALJ Mates's prior findings that Kent's degenerative disc disease was a "severe" MDI that limited Kent to "sedentary" work as of June 25, 2014. R. 19–20 (citing R. 77); *see* R. 16 (citing *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999); SSA AR 00-1(4) (Jan. 12, 2000)). She explained that ALJ Mates's findings were based on "the evidence available at the time of his decision, including [Kent's] conservative treatment and a [recent] functional capacity evaluation that documented [Kent's] abilities consistent with sedentary exertion." R. 20; *see* R. 76–85. There was no such evidence in Kent's second claim file. R. 20 (ALJ Knight concluding that ALJ Mates's "supporting explanation [did] not align with the evidence of record" available to her in April 2020); *accord* Pl.'s Br. 2 ("[T]he administrative record does not contain medical records pertaining to [Kent's] prior claim[.]"). Moreover, while "the medical evidence of record" did show that Kent had a "spine disorder" and other MDIs before December 31, 2016, R. 19; *see* R. 18, 105, 120, there were no exhibits showing that Kent received any medical treatment during the relevant period, R. 19; *see* R. 20 ("[M]uch has changed since the prior ALJ decision, including [Kent's] lack of treatment during the period from January 2016 through December 2016."). Finally, the fact that ALJ Mates made his severity and RFC findings in June 2014, roughly eighteen months before Kent's amended AOD, meant those findings were "aged and therefore less probative" of Kent's functioning in January–December 2016. R. 20. To ALJ Knight, these factors "provide[d] a basis for making a different [severity] finding," R. 16, on Kent's second DIB claim. *See* R. 19–20.

Thus, "[b]ased on the application for [DIB] . . . filed on January 30, 2019," ALJ Knight concluded that Kent was not disabled "at any time from January 28, 2016, the amended alleged onset date, through December 31, 2016, the date last insured." R. 21. The Appeals Council declined Marianne's request for review, R. 1–5, making ALJ Knight's written decision the "final decision of the Commissioner" that Kent was not disabled during that eleven-month period, R. 1. *See* Def.'s Br. 6. Marianne now asks this Court to review that decision.

### III. Discussion

Marianne's arguments focus on ALJ Knight's evaluation of ALJ Mates's prior findings that (i) Kent's degenerative disc disease was a "severe" MDI in 2011–2014, the period relevant to his first DIB claim; and (ii) the functionally limiting effects of Kent's physical MDIs restricted him to "sedentary" work as of June 25, 2014, the date ALJ Mates issued his decision on that claim. *See generally* Pl.'s Br. 2, 7–13 (citing R. 18–20, 76–77). Put simply, she asserts that ALJ Knight was all-but required to adopt those prior findings when resolving Kent's second DIB claim, *id.* at 7–10, 13, and that ALJ Knight could not rely "on the supposed 'lack of evidence' [from] the relevant time" to support her finding that Kent did not have any "severe" MDIs in 2016, *id.* at 8 (quoting R. 19). She also argues that ALJ Knight "incorrectly applied the test for 'severity' at step two," *id.* at 7, because "there [was] no evidence of whether [Kent's] condition improved or declined after [ALJ Mates's] decision," R. 20. *See* Pl.'s Br. 9. She contends that "without evidence" showing Kent's "condition had improved to the point where ALJ Mates'[s] prior severity finding became invalid, ALJ Knight's finding that none of [Kent's] impairments were severe is unsustainable." *Id.*; *see also id.* at 12–13 (asserting that "ALJ Knight had to cite evidence" showing Kent's previously severe MDIs "improved" to support her finding that Kent did not have a severe MDI during the relevant time). Marianne's arguments are unpersuasive.

\*

9

Acquiescence Ruling "AR" 00-1(4) instructs ALJs how to proceed when a Virginia resident's disability claim file for "an unadjudicated period" includes "a final decision of [the] SSA after a hearing on a prior disability claim [that] contains a finding required at a step in the sequential evaluation process for determining disability." *See* AR 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000) (interpreting *Albright v. Comm'r*, 174 F.3d 473 (4th Cir. 1999); *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987)). The Ruling codifies a "very limited" exception to the SSA's general rule that it "does not consider findings made during the determination of a disability claim to [be] evidence relevant to the determination of a later-filed claim." *Taylor v. Colvin*, No. 3:12cv8626, 2013 WL 6243716, at *13–14 (S.D. W. Va. Dec. 3, 2013) (citing AR 00-1(4), 2000 WL 43774, at *3). "It applies only to a finding of a claimant's [RFC] or other finding required at a step in the sequential evaluation process for determining disability," such as whether the claimant has a "severe" MDI that meets the Act's duration requirement, that "was made in a final decision by an ALJ . . . on a prior disability claim." AR 00-1(4), 2000 WL 43774, at *4. An ALJ tasked with "determining whether a claimant is [or was] disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances" in the claimant's later-filed case. *Id.*

AR 00-1(4) does not give preclusive effect to an ALJ's prior findings, however. *Id.*; *see Manuel v. Colvin*, No. 1:11cv8, 2015 WL 519481, at *5 (M.D.N.C. Feb. 9, 2015) (noting that the later ALJ "is not bound to adopt" the prior ALJ's "findings verbatim[,] but must consider the prior findings and assign a weight to such findings"). The later ALJ is only required to treat those findings as evidence and give them "appropriate" weight considering three factors:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical

10

> condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

AR 00-1(4), 2000 WL 43774, at *4; *see Sydnor v. Colvin*, No. 4:13cv41, 2014 WL 4792946, at *8 (W.D. Va. Sept. 25, 2014) (citing *Johnson v. Comm'r of Soc. Sec.*, 6:13cv3, 2014 WL 414243, at *7 (W.D. Va. Feb. 4, 2014)); *Grant v. Colvin*, No. 4:12cv191, 2014 WL 852080, at *7 (E.D. Va. Mar. 4, 2014). Prior findings about facts that are subject to change over time, such as whether a claimant's MDI qualifies as "severe" at step two, typically deserve "greater" weight "when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim" and deserve "less weight" as the prior period "becomes more remote." AR 00-1(4), 2000 WL 43774, at *4. Thus, the fact that an "extended length of time elapsed since the prior" ALJ's finding can support later ALJ's "decision not to follow" that finding. *Cuffee v. Berryhill*, 680 F. App'x 156, 160 (4th Cir. 2017) (quotation marks omitted).

Additionally, the claimant bears the burden of producing evidence sufficient to show he had a "severe" MDI, or combination of MDIs, during the unadjudicated period. *See Kimberly L. v. Kijakazi*, No. 1:20cv536, 2021 WL 4434323, at *14 (E.D. Va. Sept. 9, 2021) (citing *Bowen v. Yuckert*, 428 U.S. 137, 146 (1987)); *Blum v. Colvin*, No. 5:13cv68, 2014 WL 5100488, at *6 (W.D. Va. Oct. 9, 2014) (citing *Hancock*, 667 F.3d at 472). Even if the claimant's preexisting MDI itself "may be permanent and not [susceptible] to the passage of time," *Cuffee*, 680 F. App'x at 160, "medical conditions alone do not entitle a claimant to disability benefits," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011). "There must be a showing of related functional loss," *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986), for the claimant's MDI(s) to be considered "severe," *see* SSR 96-3p, 1996 WL 374181, at *1–2 (July 2, 1996). To make this "threshold" showing, *Felton-Miller*, 459 F. App'x at 230, the claimant must produce

11

evidence that his MDI "significantly limits" their "physical or mental abilities to do basic work activities," SSR 96-3p, 1996 WL 374181, at *1. *See Coffey v. Colvin*, No. 1:09cv830, 2013 WL 6410383, at *4 (M.D.N.C. Dec. 9, 2013). Conversely, an ALJ may find the claimant's MDI to be "not severe" when the ALJ logically explains why, based on the claimant's record, that the MDI "is a slight abnormality which has such a minimal effect on the individual," *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis omitted), that it does not meaningfully limit his functional ability to do basic work activities, SSR 96-3p, 1996 WL 374181, at *2. If the evidence does not show the claimant had a "severe" MDI during the relevant time, "the ALJ must find the claimant not disabled" and deny the claim. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2017); 20 C.F.R. § 404.1520(c).

\*\*

ALJ Knight followed *Albright* and AR 00-1(4) in denying Kent's second DIB claim at step two. She recognized she "must consider" ALJ Mates's prior severity and RFC findings "as evidence" and give them "appropriate weight in light of all relevant facts and circumstances," R. 16, surrounding Kent's subsequent claim that he was disabled beginning on January 28, 2016, *see* R. 19–20. ALJ Knight summarized ALJ Mates's findings and explained why the evidence, as well as the "lack of evidence," in Kent's second claim file, R. 19, provided "a basis for making a different [severity] finding with respect to the period being adjudicated" on Kent's second DIB claim, R. 16. Unlike ALJ Mates in June 2014, ALJ Knight did not have *any* medical evidence or testimony specifically showing whether and, if so, how Kent's spine disorder and resulting pain impacted his ability to sit, stand, walk, lift, or carry between January 28, 2016, and December 31, 2016. R. 20 (citing R. 76–85, 104–05, 117–18). Kent did not provide that information in the form of a pain questionnaire or other claimant's statement of limitations to DDS before he died in

12

November 2019, *see* R. 29–31, 121–22, 127–28, 133–34, 214–15, 377–82, and Marianne chose not to testify at the ALJ hearing in March 2020, *see* R. 28, 163. *See* SSR 16-3p, 2016 WL 1119029, at *10 (Mar. 16, 2016) (noting that ALJs "must base their findings solely on the evidence in the case record, including any testimony from the individual or other witnesses at a hearing"). Neither *Albright* nor AR 00-1(4) required ALJ Knight to find Kent had a "severe" spine disorder in January–December 2016 simply because ALJ Mates found a similar MDI to be severe in June 2014. *See Johnson v. Colvin*, No. 3:15cv296, 2016 WL 626378, at *2–3 (E.D. Va. Jan. 27, 2016) (rejecting claimant's argument that the second ALJ "should have applied *res judicata* to the prior ALJ's finding" that she had several "severe" MDIs, and concluding that the second ALJ adequately explained why more recent "medical evidence did not reflect" that the claimant's previously "severe" hypertension "had more than a minimal effect on her ability to perform [basic] work-related activities for at least twelve months" during the relevant time). Nor did they require her "to cite evidence that [Kent's] condition improved to the point where it was no longer severe," Pl.'s Br. 12, in order to make a different severity finding with respect to January–December 2016. *See, e.g.*, *Johnson*, 2016 WL 626378, at *3. They merely required ALJ Knight to "consider" ALJ Mates's prior severity finding and give it "appropriate weight" considering the three factors she cited in her decision. R. 16 (citing AR 00-1(4)). Kent still bore the burden to show that his spine disorder significantly limited his physical functioning during the relevant time. *See Kimberly L.*, 2021 WL 4434323, at *14 (citing *Bowen*, 428 U.S. at 146).

ALJ Knight also explained that ALJ Mates had evidence showing Kent received at least some medical treatment for his degenerative disc disease before June 2014. R. 20 (citing R. 84–85). Kent's second DIB claim file, on the other hand, revealed that Kent's course of treatment for his neck, back, and hip pain "ha[d] changed since" ALJ Mates issued his decision. *Id.*; *see* R. 29–

13

31, 103–04, 197–200. Indeed, this record showed a complete "lack of treatment" from January – December 2016. R. 20; *see* R. 19. Thus, while ALJ Knight had "no evidence of whether" Kent's spine disorder *itself* "improved or declined after the [prior] decision,"[8] the "lack of treatment records" in Kent's file suggested that his pain or other symptoms "at least did not worsen and [were] manageable without ongoing treatment." R. 20; *cf. Cuffe*, 680 F. App'x at 160 ("[E]ven though appellant's nerve damage may be permanent, the RFC is based on [her] functional limitations—not her injuries alone." (citing *Gross*, 785 F.2d at 1166) (emphasis omitted)); *Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. 2014) ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is.").

Finally, ALJ Knight found that the eighteen-month gap between the time ALJ Mates issued his decision in June 2014 and Kent's amended AOD in January 2016 rendered the prior severity and RFC findings "aged and therefore less probative" of Kent's functioning before December 31, 2016. *See* R. 20. "Coupled with record evidence showing that [Kent did not] seek medical treatment," *Cuffee*, 680 F. App'x at 160, at all in 2015, 2016, or 2017, *see* R.197–200, and Kent's failure to produce any information about the intensity, persistence, or functionally limiting effects of his MDIs and related symptoms after his amended AOD, *see* R. 19–20, the somewhat "extended length of time" since ALJ Mates issued his decision supports ALJ Knight's "decision to depart from the prior" severity finding, *cf. Cuffee*, 680 F. App'x at 160 (finding that

---

[8] Contrary to Marianne's assertion, ALJ Knight did not conclude that Kent's degenerative disc disease "had *improved* to the point where it was no longer severe," Pl.'s Br. 10 (emphasis added), in January–December 2016. She simply found that Kent did not have a "severe" MDI during that time because, considering "the lack of medical evidence and the lack of testimony" in the record before her, R. 20–21, none of Kent's MDIs "significantly limited [his] ability to perform basic work-related activities for 12 consecutive months," R. 18.

14

"more than two years" was an "extended length of time"). Accordingly, ALJ Knight's decision complies with *Albright* and AR 00-1(4).

\*\*\*

Marianne's argument that ALJ Knight "incorrectly applied the test for 'severity' at step two," Pl.'s Br. 7, fails for the same reasons. As explained, it was Kent's responsibility to show that his MDI(s) significantly limited his physical or mental ability to perform basic work-related activities during the relevant time. *Kimberly L.*, 2021 WL 4434323, at \*14 (citing *Bowen*, 428 U.S. at 146). When Kent filed this DIB claim in January 2019, he "alleged that he was unable to work due to back pain, . . . neck pain, numbness in his arms and hands, [and] hip weakness[.]" R. 19 (citing R. 194). He also reported taking Oxycodone for neck and back pain, R. 196–97, even though he had not seen the prescribing physician since 2013, R. 198. In June 2019, Kent reported taking Tramadol for pain. R. 214. That drug was prescribed by Larry Smith, M.D., who Kent saw for the first time in March 2018. R. 214, 200. None of this information sheds any light on how Kent's spine disorder allegedly limited his functional ability to do basic work activities between January 28, 2016, and December 31, 2016. *See Felton-Miller*, 459 F. App'x at 230 (noting that a claimant's MDI must cause some "functional loss" to be found severe at step two, and that a "diagnosis, without more, does not establish that [the claimant] suffers from any particular symptoms or limitations").

Moreover, counsel represented that Kent's medical history was "correctly" exhibited in this record, R. 31, and he agreed with ALJ Knight that Kent had "a gap" in treatment during the relevant time, R. 33. The most recent pre-DLI physical exam findings in Kent's record are from a June 27, 2014, gastroenterology visit. *See* R. 274–76. Kent reported back pain and generalized weakness, but he denied joint stiffness and numbness. R. 275. He was taking 75 mg Diclofenac

once daily for lower back pain. R. 275–76. Kent's motor exam that day was normal. R. 276; *see* R. 20 (citing R. 274–76). The provider did not note any findings related to his musculoskeletal system. R. 276. Kent's next physical exam was on December 17, 2018, also at a gastroenterology visit. R. 278. He took Aleve daily, *id.*, but there is no indication that he still took prescription pain medication, R. 279. Kent reported back pain, joint stiffness, numbness, and generalized weakness. R. 279. As before, the provider did not note any findings related to his musculoskeletal system. *See* R. 278–81.

  ALJ Knight cited Kent's failure to seek medical treatment during the relevant time as one reason to support her finding that he did not have a severe MDI in 2016. R. 20. Marianne objects that the ALJ failed to "consider[] *any* possible reasons why [Kent] did not seek more recent retreatment for his back and arm impairments—impairment which, in any case, did not change for the better." Pl.'s Br. 11 (citing SSR 16-3p). She asserts that ALJ Knight should have "consider[ed] that [Kent] simply did not feel well enough to visit doctors for treatment of his back pain," *id.* at 12, because he also had gastrointestinal problems in 2014, followed by liver disease in 2018–2019, *see id.* at 11–12. SSR 16-3p instructs ALJs how to consider a claimant's "attempts to seek medical treatment for symptoms . . . when evaluating whether symptom intensity and persistence affect the [claimant's] ability to perform work-related activities[.]" SSR 16-3p, 2016 WL 1119029, at *8. Frequent "attempts to obtain relief of symptoms . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent," *id.*, enough to significantly limit work-related functioning, *see id.* at *4 (explaining that ALJs consider symptoms to determine whether an MDI is severe). "In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints," the ALJ "may find" the claimant's subjective

statements "are inconsistent with the overall evidence of record." *Id.* ALJs "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints." *Id.* But, the claimant is primarily responsible for explaining why his failure to seek treatment does not support a finding that his "symptoms may not be severe enough to prompt him to seek treatment, or [that] the symptoms may be relieved with other the counter medications." *See id.* at *9 (listing these as possible reasons why a claimant may not seek medical treatment comparable to their alleged symptoms). ALJs have no obligation to conjure up other possible explanations that are not apparent from the evidence of record in the claimant's case. *See id.* at *10.

Marianne waived her right to testify at the ALJ hearing, R. 162, and her attorney agreed Kent's record showed "a gap" in his medical treatment from late 2014 through early 2018, *see* R. 31–33. If Kent's gastrointestinal disorders were so serious that he could not continue clinical treatment for his back pain during that time, Pl.'s Br. 11–12, then "evidence to that effect should have been presented by [his] attorney," *Mabe v. Colvin*, No. 4:12cv52, 2013 WL 6055239, at *7 (W.D. Va. Nov. 15, 2013); *see also Schaller v. Colvin*, No. 5:13cv334, 2014 WL 4537184, at *8 (E.D.N.C. Sept. 11, 2014) ("Claimant was represented by counsel, and the ALJ was allowed to presume that he presented his best case."). Without it, I cannot fault ALJ Knight for finding that a total "lack of treatment records" for Kent's preexisting spine disorder from the relevant period suggested that Kent's back pain was "manageable without ongoing treatment" during that same time, R. 20. *See, e.g.*, *Albert A. v. Kijakazi*, No. 3:21cv9, 2022 WL 4380134, at *9 (W.D. Va. Sept. 22, 2022) (affirming ALJ's step-two denial where "the ALJ recognized[] the record

17

contain[ed] no evidence from the relevant period" and "reasonably found that Albert's lack of treatment reflected that his symptoms were not as severe as alleged").

ALJ Knight also cited Kent's normal physical exam findings on June 27, 2014, as well as the "lack of testimony" in Kent's record to support her finding that he did not have a severe MDI between January 28, 2016, and December 31, 2016. R. 20. Marianne does not directly challenge those reasons.[9] *See generally* Pl.'s Br. 8–13. Accordingly, I must conclude ALJ Knight's finding is adequately "supported as a matter of fact and law." *Kenne v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018).

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **DENY** Marianne's Motion for Summary Judgment, ECF No. 13; **GRANT** the Commissioner's

---

[9] As part of her *Albright* challenge, Marianne asserts that a September 2018 X-ray indicating Kent had "'moderate to advanced degenerative changes'" in his lumbosacral spine "shows that [his] condition had worsened" after ALJ Mates issued his decision in June 2014. Pl.'s Br. 10 (quoting R. 370). ALJ Knight did not mention this post-DLI radiograph, R. 370, in her decision. Her failure to explicitly consider whether the image "shed [any] light on [Kent's] functioning during the relevant time period," *Parker v. Berryhill*, 733 F. App'x 684, 687 (4th Cir. 2018) (discussing *Bird*, 699 F.3d at 338–42), is harmless because the report simply states that "[m]oderate to advanced degenerative changes" and "[a] grade 1 anterolisthesis of L5 on S1" were seen on radiographs in September 2018. R. 370. The report contains no information about how Kent's spine disorder and alleged pain, R. 18–19, affected his physical functioning in January–December 2016. *See Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009) ("Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error."); *cf. Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (finding no reversible error where the ALJ's decision stated "that the whole record was considered" and "specifically referenced" evidence relevant to claimant's back pain and the claimant "failed to point to *any* specific piece of evidence not considered by the [ALJ] that might have changed the outcome of his disability claim"). It is also largely duplicative of a lumbosacral X-ray from April 2012 showing that Kent had "fairly advanced facet degenerative changes at L5-S1 with approximately 7-8 mm of anterolisthesis of L5 on S1." R. 374. The DDS physicians cited this report in finding that Kent had a "medically determinable" spine disorder before December 31, 2016. *See* R. 103,105, 116, 120. Both opined that Kent's second DIB claim file did not contain evidence sufficient to evaluate his physical functioning during that time. R. 104, 108, 120–21. ALJ Knight found those opinions "persuasive" because they were "supported by the lack of available records during the relevant time period." R. 20.

18

Motion for Summary Judgment, ECF No. 18; **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.
Failure to file timely written objections to these proposed findings and recommendations

within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk shall send certified copies of this Report & Recommendation to the parties.

ENTER: July 13, 2023

Joel C. Hoppe
United States Magistrate Judge